988 F.2d 322
 Bankr. L. Rep. P 75,161
In re CHATEAUGAY CORPORATION, Reomar, Inc., and LTV
Corporation, Inc., et al., Debtors.
OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF LTV AEROSPACE
AND DEFENSE CO. INC., Appellant,
v.
OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF LTV STEEL CO.,
INC., Chateaugay Corporation, Reomar, Inc., et al., Pension
Benefit Guaranty Corporation, LTV Corporation, et al.,
Official Parent Creditors' Committee of the LTV Corporation,
Appellees.
 No. 759, Docket 92-5056.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 6, 1993.
Decided March 9, 1993.
 
 Max O. Truitt, Jr., Washington, DC (William J. Perlstein, Stephen M. Cutler, Anne D. Bolling, Gregory S. Lane, Wilmer, Cutler & Pickering, Washington, DC, Carla E. Craig, Steven M. Schwartz, Hertzog, Calamari & Gleason, New York City, on the brief), for appellant.
 Brian M. Cogan, New York City (Mark S. Wintner, Mark A. Speiser, Leslie Payson, David Simonetti, James McGovern, Stroock & Stroock & Lavan, Harold S. Novikoff, Wachtell, Lipton, Rosen & Katz, New York City on the brief), for appellee Official Committee of Unsecured Creditors of LTV Steel Co., Inc.
 Lewis B. Kaden, New York City (Karen E. Wagner, Lawrence J. Portnoy, Davis Polk & Wardwell, Michael J. Crames, Kaye, Scholer, Fierman, Hays & Handler, New York City on the brief), for appellees LTV Corp. and LTV Steel Co., Inc.
 James J. Armbruster, Asst. Gen. Counsel, Pension Benefit Guar. Corp., Washington, DC (Carol Connor Flowe, Gen. Counsel, William G. Beyer, Deputy Gen. Counsel, Pension Benefit Guar. Corp., Charles G. Cole, Nancy K. Hayes, Sara E. Hauptfuehrer, Carina J. Campobasso, Steptoe & Johnson, Washington, DC, on the brief), for appellee Pension Benefit Guar. Corp.
 Thomas E. Biron, Philadelphia, PA (Raymond L. Shapiro, Blank, Rome, Comisky & McCauley, Philadelphia, PA, on the brief), for appellee Official Parent Creditors' Committee of the LTV Corp.
 Before: KEARSE, WINTER, and WALKER, Circuit Judges.
 KEARSE, Circuit Judge:
 
 
 1
 The Official Committee of Unsecured Creditors of LTV Aerospace and Defense Co. ("Aerospace Committee" or "Committee") appeals from an order of the United States District Court for the Southern District of New York, David N. Edelstein, Judge, dismissing its appeal from a November 5, 1991 order of the United States Bankruptcy Court for the Southern District of New York, Burton R. Lifland, Chief Judge, which, inter alia, authorized the payment of funds from the estate of LTV Steel Co. ("LTV Steel") to a pension plan through the end of September 1992. The district court dismissed Aerospace Committee's appeal on the ground that the Committee lacked standing to attack the bankruptcy court's order. See In re Chateaugay Corp., 141 B.R. 794 (S.D.N.Y.1992). On appeal, the Committee challenges the district court's standing ruling. For the reasons below, we conclude that the present appeal is moot, and we accordingly vacate the district court's order and remand with instructions to dismiss the Committee's appeal to the district court on the ground of mootness.
 
 I. BACKGROUND
 
 2
 In July 1986, LTV Corporation ("LTV") and 66 of its subsidiary and affiliated companies (collectively "debtors"), including LTV Steel and LTV Aerospace and Defense Co. ("Aerospace"), filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 1101, et seq. (1988) ("Code"). The individual cases were consolidated for procedural, though not substantive, purposes and are being jointly administered.
 
 
 3
 A. Proposed Settlement of LTV Steel's Pension Fund Liabilities
 
 
 4
 At the time of the Chapter 11 filings, LTV Steel was the sponsor of four pension plans administered by LTV, including the Jones & Laughlin Hourly Pension Plan ("J & L Hourly Plan" or "Plan"). The Pension Benefit Guaranty Corporation ("PBGC") at first terminated these plans and took over their assets and liabilities. It subsequently reinstated the J & L Hourly Plan and two others, see generally Pension Benefit Guaranty Corp. v. LTV Corp., 496 U.S. 633, 640-44, 110 S.Ct. 2668, 2672-75, 110 L.Ed.2d 579 (1990), returning responsibility for their administration and funding to LTV, see generally In re Chateaugay Corp., 973 F.2d 141, 142 (2d Cir.1992).
 
 
 5
 Since both Aerospace and LTV Steel are subsidiaries of LTV, Aerospace is a member of LTV Steel's "controlled group" for purposes of the Employee Retirement Income Security Act ("ERISA") and is jointly and severally liable with LTV and other LTV subsidiaries for claims made against the LTV Steel pension plans upon termination. See 29 U.S.C. § 1362(a) (1988 & Supp. I 1989); In re Chateaugay Corp., 973 F.2d at 142. Accordingly, PBGC filed proofs of claim against Aerospace, as well as against LTV Steel and the remaining controlled group members, for the amount by which the terminated plan and the three restored plans were underfunded--a total of more than $3 billion. With respect to the restored pension plans, the PBGC claims are, in effect, contingent claims to be pressed if one or more of those plans terminates prior to the confirmation of a reorganization plan.
 
 
 6
 Any reorganization of the debtors' estates will have to resolve these claims in a manner acceptable to PBGC. To this end, the debtors filed a proposed joint plan of reorganization in May 1991, the catalyst for which was a tentative settlement between the debtors and PBGC with respect to the pension obligations. The debtors' Disclosure Statement Pursuant to § 1125 of the Bankruptcy Code, dated May 1, 1991, described the proposed plan as "dependent to a great extent upon [the debtors'] reaching final agreement with the PBGC substantially in accordance with the terms of the tentative Pension Settlement," and stated that one of the chief goals of the tentative settlement was to have the debtors provide sufficient funds to the plans to "ensure that beneficiaries of the restored pension plans will be paid in full."
 
 
 7
 B. The Orders for Interim Funding of the J & L Hourly Plan
 
 
 8
 During the reorganization proceedings, the J & L Hourly Plan was continuing to pay benefits to its participants, though it was not receiving postpetition contributions from the debtors. In May 1991, the debtors estimated that the Plan's liquid assets would be exhausted by the end of July 1991. Seeking to avoid a mandatory termination of the plan under § 4042(a) of ERISA, 29 U.S.C. § 1342(a) (1988 & Supp. I 1989), and to preserve the tentative settlement with PBGC, the debtors sought authorization from the bankruptcy court for the "immediate payment by LTV to the J & L Hourly Plan of an amount equal to the benefit payments expected to be due under such plan for July, August and September, 1991, but not exceeding $40 million." (Application in Support of Order Authorizing Payments to J & L Hourly Pension Plan, dated May 13, 1991, at 9.) Over the objections of certain creditor committees, the bankruptcy court entered an order in June 1991 authorizing the immediate payment by LTV Steel to the J & L Hourly Plan of $27 million, representing two months of benefit payments. The Official Committee of Unsecured Creditors of LTV Steel Company, Inc. ("Steel Committee"), and Cold Spring Management, Inc., a creditor of Aerospace and then-chair of an unofficial Aerospace creditors' committee, appealed that order. Their appeals were subsequently withdrawn pursuant to an accord in which the two appellants agreed not to oppose any application by the debtors to fund the J & L Hourly Plan through November 30, 1991, and the debtors agreed not to seek authorization for any additional funding beyond that date without the consent of the two appellants.
 
 
 9
 On October 30, 1991, the Steel Committee, having also reached a tentative settlement with PBGC, sought an order authorizing the immediate payment by LTV to the J & L Hourly Plan of an amount equal to three months' benefits and, subject to the occurrence of certain events, any additional monthly payments necessary thereafter to provide sufficient funding through June 1992. Following a hearing, the bankruptcy court issued an order on November 5, 1991 ("November 1991 Order") granting the request, finding that additional payments to the J & L Hourly Plan were "necessary to the process of developing a plan of reorganization for The LTV Corporation and its affiliates." Accordingly, the November 1991 Order authorized and directed LTV Steel (a) to make an immediate payment to the J & L Hourly Plan sufficient to fund three months' benefits, providing a "Three-Month Cushion," and (b) thereafter to make monthly contributions to the Plan from December 1991 through September 1992 of amounts "sufficient to fund benefits in each month and thereby replenish the Three-Month Cushion." November 1991 Order at 2. The order also provided, inter alia, that these payments would constitute a dollar-for-dollar offset against any ultimate distributions to the J & L Hourly Plan or the other restored plans, or to PBGC with respect to any of the plans pursuant to a plan of reorganization.
 
 
 10
 The Aerospace Committee timely appealed from the November 1991 Order. It did not, however, request a stay pending appeal. Its appeal remained pending until July 7, 1992.
 
 
 11
 In the meantime, LTV Steel made the required payments to the J & L Hourly Plan; by September 30, 1992, its payments totaled approximately $163 million. All of these funds have been paid out as pension benefits to the Plan's participants.
 
 
 12
 In addition, after lengthy negotiations, LTV Steel and the United Steelworkers of America reached an agreement governing their continued relationship ("Collective Bargaining Agreement"). A key provision of this agreement is LTV Steel's commitment "to continue the funding of the J & L Hourly Pension Plan through the earlier of the effective date of the Plan of Reorganization or September 5, 1993." In an order dated August 12, 1992 ("August 1992 Order"), the bankruptcy court approved the Collective Bargaining Agreement, including LTV Steel's commitment to continue funding the J & L Hourly Plan. After the September 1992 expiration of the funding requirement contained in the November 1991 Order, LTV Steel continued to fund the Plan pursuant to the August 1992 Order. The Aerospace Committee neither objected to nor appealed from the August 1992 Order.
 
 C. The District Court's Decision
 
 13
 The district court dismissed the Aerospace Committee's appeal from the bankruptcy court's November 1991 Order. In an Opinion and Order dated July 7, 1992, the district court ruled that the Committee did not have standing to appeal because the creditors of Aerospace are not creditors of LTV Steel and therefore lack a direct pecuniary interest in the November 1991 Order. The present appeal followed.
 
 II. DISCUSSION
 
 14
 On appeal, the Aerospace Committee contends that it had standing to appeal the November 1991 Order because (1) the sole purpose of that order was to preserve the tentative settlement with PBGC, which purports to bind Aerospace, (2) under the proposed reorganization plan, the claims of Aerospace's creditors will be satisfied with LTV common stock, and (3) Aerospace has a claim for contribution and indemnification against LTV Steel. The appellees, which include LTV, LTV Steel, creditors' committees of both, and PBGC, are divided on the question of whether or not the Aerospace Committee had standing to challenge the November 1991 Order; but all of the appellees contend that intervening events have made the appeal moot. We do not reach the merits of the Committee's present appeal because we agree with appellees that, since the Committee did not obtain a stay of the November 1991 Order, and as a result LTV Steel made the required payment to the J & L Hourly Plan, which in turn distributed the funds to the pensioners, its appeal to the district court became moot, and this appeal is likewise moot.
 
 
 15
 The duty of an Article III court is to decide live controversies, "not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." Mills v. Green, 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895); see Murphy v. Hunt, 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (per curiam); Blackwelder v. Safnauer, 866 F.2d 548, 550-51 (2d Cir.1989). Accordingly, when, during the pendency of an appeal, events occur that would prevent the appellate court from fashioning effective relief, the appeal should be dismissed as moot. Lewis v. Continental Bank Corp., 494 U.S. 472, 477-78, 110 S.Ct. 1249, 1253-54, 108 L.Ed.2d 400 (1990); Mills v. Green, 159 U.S. at 653, 16 S.Ct. at 133.
 
 
 16
 An appeal should also be dismissed as moot when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable. In re AOV Industries, Inc., 792 F.2d 1140, 1147 (D.C.Cir.1986); In re Roberts Farms, Inc., 652 F.2d 793, 798 (9th Cir.1981). Such a dismissal is appropriate when the "appellant has made no effort to obtain a stay and has permitted 'such a comprehensive change of circumstances to occur as to render it inequitable' for the appellate court to reach the merits of the appeal." In re Crystal Oil Co., 854 F.2d 79, 82 (5th Cir.1988) (quoting In re Roberts Farms, Inc., 652 F.2d 793, 798 (9th Cir.1981)).
 
 
 17
 These principles are especially pertinent in bankruptcy proceedings, where the ability to achieve finality is essential to the fashioning of effective remedies. See, e.g., In re Stadium Management Corp., 895 F.2d 845, 848 (1st Cir.1990); In re Public Service Co. of New Hampshire, 963 F.2d 469, 471-72 (1st Cir.) (equitable considerations reflecting "the important public policy favoring orderly reorganization and settlement of debtor estates" may render an appeal moot), cert. denied, --- U.S. ----, 113 S.Ct. 304, 121 L.Ed.2d 226 (1992). As a practical matter, completed acts in accordance with an unstayed order of the bankruptcy court must not thereafter be routinely vulnerable to nullification if a plan of reorganization is to succeed. See, e.g., In re Stadium Management Corp., 895 F.2d at 848-49; In re Highway Truck Drivers Local 107, 888 F.2d 293, 297-98 (3d Cir.1989); In re Onouli-Kona Land Co., 846 F.2d 1170, 1174-75 (9th Cir.1988); In re Tiana Queen Motel, Inc., 749 F.2d 146, 152 (2d Cir.1984), cert. denied, 471 U.S. 1138, 105 S.Ct. 2681, 86 L.Ed.2d 699 (1985); In re Combined Metals Reduction Co., 557 F.2d 179, 188-89 (9th Cir.1977). Thus, though the Code itself does not require a party to seek a stay pending appeal except in limited circumstances, see 11 U.S.C. § 363(m) (1988) (sale or lease of estate property to good faith purchaser or lessor not affected by reversal or modification on appeal absent stay); id. § 364(e) (1988) (same with respect to debt or lien granted good faith creditor), Bankruptcy Rule 8005 sets forth a procedure by which a party may seek a general stay of a bankruptcy court's order pending appeal so that the estate and the status quo may be preserved pending resolution of the appeal. See In re Onouli-Kona Land Co., 846 F.2d at 1172. The party who appeals without seeking to avail himself of that protection does so at his own risk.
 
 
 18
 These principles guide our consideration of the present case. In failing to request a stay of the November 1991 Order, the Aerospace Committee allowed that order to be fully implemented. As a consequence, LTV Steel has paid into the J & L Hourly Plan all of the funds that order required it to pay. Those funds have been disbursed to the Plan's participants in payment of their benefits; and the order has expired of its own terms. The Plan's numerous participants have presumably used the benefits they have received to meet their living expenses. The recoupment of these funds from them, in addition to being impracticable, would impose an unfair hardship on faultless beneficiaries who are not parties to this appeal. Moreover, the continued funding of the J & L Hourly Plan was apparently a key component of the Collective Bargaining Agreement reached by LTV Steel in the aftermath of the November 1991 Order, an agreement that appears to have cleared the way for a reorganization of all the debtors' estates. Undoing these events at this juncture would be contrary to the Code's strong policies favoring finality and settlement.
 
 
 19
 The Aerospace Committee advances a number of suggestions as to why its appeal may not be moot, all of which are meritless. It contends first that it was not required to seek a stay because it was "highly unlikely" that the bankruptcy court would have granted one. A party cannot escape the obligation to protect its litigation position by so facile an argument. If the Committee wished to prevent LTV Steel from making payments to the J & L Hourly Plan pursuant to the November 1991 Order, it should have requested a stay from the bankruptcy court; if that request had been denied, the Committee could have appealed from the denial of the stay and moved in the district court for a stay pending that appeal. We suspect, however, that the real reason for the Committee's failure to seek a stay may be found in its statement that "[i]f the funding authorized by the November 5 Funding Order were stayed, the J & L Hourly Plan would have run out of money and been forced to terminate." (Aerospace Committee's reply brief at 8.) As indicated in Part I.A. above, termination of the Plan prior to reorganization would have removed any contingency from PBGC's claims with respect to the J & L Hourly Plan against Aerospace as an ERISA "controlled group" member.
 
 
 20
 The Aerospace Committee argues also that its appeal is not moot because either the J & L Hourly Plan, which currently has funds, or PBGC could be ordered to repay the $163 million paid by LTV Steel pursuant to the November 1991 Order. Both suggestions are specious. An order requiring PBGC to reimburse LTV Steel, if lawful, would likely trigger termination of the Plan, resulting in liability for funding the Plan promptly being shifted back to the debtors. Further, an attempt to shift the burden of funding the Plan to PBGC would be inconsistent with the tenor of the tentative settlement agreements and would likely impede the settlement and result, similarly, in termination of the Plan. The Committee's suggestion that this Court order the Plan itself to repay the moneys to LTV Steel has a parallel flaw, for it ignores the obligation imposed on LTV Steel by the August 1992 Order, from which the Committee did not bother even to appeal. Under the latter order, funds paid out by the Plan must be replenished by LTV Steel, an entity with which Aerospace is jointly and severally liable. In sum, the relief that the Committee contends is still available is illusory.
 
 
 21
 Indeed, the practical thrust of the Aerospace Committee's arguments here is to ask this Court to provide it with an advisory opinion as to the validity of, and its standing to assert, claims it may seek to press against LTV Steel or against PBGC. We decline the invitation.
 
 CONCLUSION
 
 22
 We have considered all of the Aerospace Committee's arguments in support of the viability of this appeal and have found them to be without merit. The present appeal is moot, and we express no view as to the merits of the Committee's challenge to the district court's July 7, 1992 order. The order of the district court is vacated, see Great Western Sugar Co. v. Nelson, 442 U.S. 92, 99 S.Ct. 2149, 60 L.Ed.2d 735 (1979) (per curiam), and the matter is remanded for entry of an order dismissing the Aerospace Committee's appeal from the November 1991 Order as moot.
 
 
 23
 Costs to appellees.