**In re LORAL SPACE & COMMUNICATIONS LTD., et al., Debtors.**

**Loral Stockholders Protective Committee, Appellant,**

**v.**

**Loral Space & Communications Ltd., et al., Appellees.**

**No. 05 Civ. 7975(VM).**

United States District Court, S.D. New York.

May 26, 2006.

Phillip Peter Ivaldy, Huntington Beach, CA, pro se.

Steven Karotkin, Huntington Beach, CA, for Official Committee of Unsecured Creditors.

## DECISION AND ORDER

MARRERO, District Judge.

Pending before the Court is the motion of appellees Loral Space & Communications Ltd. ("Loral Ltd.") and its affiliated reorganized debtors and debtors in possession (collectively, "Loral" or the "Reorganized Debtors") to dismiss as moot the appeal of *pro se* appellant Loral Stockholders Protective Committee ("LSPC") from two orders of the United States Bankruptcy Court for the Southern District of New York. Loral's motion was joined by appellee Official Committee of Unsecured Creditors of Loral Space & Communications Ltd. (the "Creditors Committee"). For

the reasons set forth below, Loral's motion to dismiss is granted.

## I.  BACKGROUND

### A.  *BANKRUPTCY COURT PROCEEDINGS AND APPEALS THEREFROM*

On August 1, 2005, Judge Robert Drain of the United States Bankruptcy Court of the Southern District of New York (the "Bankruptcy Court") entered two orders in connection with Chapter 11 bankruptcy proceedings involving Loral. The first order (the "Confirmation Order") confirmed Loral's Fourth Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code (the "Reorganization Plan").[1] The second order (the "Denial Order") denied the motion of the Official Committee of Equity Security Holders for leave to prosecute a fraudulent conveyance claim.[2]

On or about August 10, 2005, LSPC apparently attempted to appeal the Bankruptcy Court's two orders by submitting certain documents to Judge Robert Patterson of this Court, who had adjudicated a previous appeal of a Bankruptcy Court order brought by LSPC in 2004 in connection with the Loral bankruptcy proceedings. Judge Patterson denied the application, indicating that the Court did not have plenary jurisdiction over the Loral bankruptcy proceedings and that any appeal of an order or decision of the Bankruptcy Court must be filed with the Clerk of Court for random assignment to a district

court judge. *See* Endorsed Letter (Docket No. 36), *In re Loral Space & Communications,* 04 Civ. 8645(RPP) (S.D.N.Y. Aug. 16, 2005). On August 10, 2005, LSPC also submitted to the Clerk of the Bankruptcy Court a notice of appeal captioned "Appeal of Drain's Orders Approving 4[th] Amended Plan, Disclosures and Denying Leave to Sue Request on Fraudulent Conveyance Charge In re: Loral Space & Communications Ltd., et al. Brought by the Loral Stockholders Protective Committee" (the "Notice of Appeal"), along with a designation of items in the record on appeal (the "Designation"). According to Loral, LSPC did not serve a copy of the Notice of Appeal or the Designation on Loral or any other party in interest, and Loral did not receive notice of the appeal until the Clerk of the Bankruptcy Court entered the documents on the Bankruptcy Court's docket on September 6, 2005 and September 7, 2005.

On September 14, 2005, the Notice of Appeal was transmitted to this Court.[3] This Notice of Appeal contains arguments in support of LSPC's appeal; however, other than correspondence in September 2005 from the parties regarding scheduling a conference call, this Court received no further briefing on this appeal.

On September 16, 2005, Loral filed a motion in the Bankruptcy Court to strike certain items from the Designation. On October 3, 2005, the Bankruptcy Court issued an order (the "Strike Order") granting the motion to strike in large part and directed Loral and LSPC to draft a joint

---

**1.** *See* Order Confirming Debtors' Fourth Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code, as Modified, dated August 1, 2005, attached as Exhibit 1 to the Declaration of Eric J. Zahler in Support of Appellees' Motion to Dismiss the Loral Stockholders Protective Committees' Appeal, dated February 3, 2006 ("Zahler Decl.").

**2.** *See* Order Denying Motion of the Official Committee of Equity Security Holders for Leave to Prosecute Claim, dated August 1, 2005, attached as Exhibit 2 to Zahler Decl.

**3.** This Notice of Appeal, although assigned to this Court, is addressed to Judge Robert Patterson.

designation of record reflecting the Bankruptcy Court's determination regarding which items would be included in the record on appeal.

On or about October 14, 2005, LSPC allegedly submitted to the Bankruptcy Court a notice of appeal of the Strike Order; according to Loral, no record exists of that notice of appeal being filed with the Clerk of the Bankruptcy Court.[4] Nonetheless, on October 19, 2005, LSPC submitted papers to this Court in support of its appeal of the Strike Order (the "Strike Appeal") under the same docket number as the instant appeal. (*See* Loral Stockholders Protective Committee Appeal of U.S. Bankruptcy Court Order, Dated October 3, 2005 Granting Motion to Strike Certain Items from the Record on Appeal by the Loral Stockholders Protective Committee, dated October 18, 2005.) On November 1, 2005, Loral filed its response to the Strike Appeal, arguing both that the Strike Order was correct and that LSPC's appeal was untimely; the Creditors' Committee joined Loral's response. LSPC filed a reply on November 10, 2006.

## B.  IMPLEMENTATION OF THE REORGANIZATION PLAN

Following entry of the August 1, 2005 orders of the Bankruptcy Court, Loral undertook several steps required to implement the Reorganization Plan, including (1) obtaining approval from the Federal Communications Commission to transfer space and earth station licenses to Loral Space & Communications Inc. ("New Lor-

al"), the entity through which Loral was to begin conducting business following the effective date of the Reorganization Plan; (2) entering into numerous agreements, including a Note Indenture, required to implement the Reorganization Plan; and (3) filing with the Secretary of State of the State of Delaware the New Loral Certificate of Incorporation and Reorganized Subsidiary Debtors' Certificates of Incorporation. (*See* Appellees' Mem. of Law in Supp. of Mot. to Dismiss the Loral Stockholders Protective Committee's Appeal, dated February 3, 2006 ("Loral Mem."), at 6; Zahler Decl. ¶ 4.)

On November 21, 2005, the Reorganization Plan became effective. On that date, Loral emerged from Chapter 11 and began conducting business as New Loral. (Zahler Decl. ¶¶ 3, 5.)

Following the effective date, Loral engaged in numerous actions to consummate the Reorganization Plan, including:

(1) distributing $81.2 million in cash under the Reorganization Plan to over 600 creditors, in satisfaction of various claims under the Reorganization Plan;

(2) distributing 18.7 million shares of new common stock and 987,000 shares of new preferred stock of New Loral to certain creditors in satisfaction of their claims;

(3) cancelling over 44 million shares of common stock and over four million shares of preferred stock held by the pre-existing shareholders of Loral Ltd., including all stock held by members of LSPC;

---

4.  The Docket Sheet for the underlying bankruptcy case, No. 03–41710, does not indicate that any notice of appeal of the Strike Order was filed. On October 14, 2005, this Court's chambers received a copy of a document dated October 12, 2005 and entitled "Notice of Appeal," indicating an appeal of the Strike Order, with a certificate of service indicating service upon the Bankruptcy Court, this

document was not entered as filed either with the Bankruptcy Court or this Court. In its opposition to LSPC's Strike Appeal, Loral argues that because there is no evidence that LSPC's appeal was *filed* with the Bankruptcy Court by October 14, 2005, it should be dismissed as untimely under Bankruptcy Rule 8002(a).

(4) causing the stock of New Loral to begin trading on the NASDAQ on December 8, 2005;

(5) distributing new notes defined under the Reorganization Plan to creditors who exercised subscription rights defined under the Reorganization Plan;

(6) closing the sale of certain assets enumerated in the Reorganization Plan; and

(7) assuming executory contracts and unexpired leases in reliance on the restructuring effected by the Reorganization Plan.

(Zahler Decl. ¶ 6.) Thus, substantially all of the property of Loral proposed to be transferred, and all equity interests in Loral proposed to be cancelled under the Reorganization Plan, were transferred and cancelled, respectively; the Reorganized Debtors assumed all business operations and all property dealt with by the Reorganization Plan; and nearly all distributions to be made under the Reorganization Plan have been completed. (Zahler Decl. ¶ 7.)

Additional transactions have also taken place in reliance on the Reorganization Plan. For example, in reliance on the occurrence of the effective date of the Reorganization Plan, Loral entered into a settlement resolving long-standing disputes with another entity; such settlement was approved by the Bankruptcy Court on January 6, 2006. (Zahler Decl. ¶¶ 8–9.)

Although LSPC appealed the Bankruptcy Court's orders, it did not seek a stay of the Reorganization Plan. LSPC admits that it "has not attempted to oppose numerous actions of Debtors to consummate the Reorganization Plan," including all of the enumerated actions above. (Appellant's Resp. Br. to Debtors' Mot. to Dismiss the Loral Stockholder Protective Committee's Appeal and Appellant's Motion for Order to Reopen the Confirmation Hearing of Debtors' Confirmation Plan Such That No Actions That Have Been Consummated Be Disturbed, dated March 3, 2006 ("LSPC Opposition Br."), at 5.) Indeed, LSPC asserts that there was "absolutely no requirement and absolutely no need to seek a stay of the Confirmation Order." (*Id.*)

## C. MOTION TO DISMISS THE APPEAL AS MOOT

On February 3, 2006, Loral filed a motion to dismiss LSPC's appeal of the Confirmation Order and the Denial Order as moot. The Creditors' Committee joined in the motion on February 8, 2006. LSPC filed an opposition brief on March 3, 2006;[5] and Loral filed a reply on March 17, 2006.

## II. DISCUSSION

### A. LEGAL STANDARD

When a plan of reorganization has been substantially consummated, an appeal is presumed moot. *See In re Chateaugay Corp.*, 94 F.3d 772, 776 (2d Cir.1996) ("*Chateaugay III*") ("Reviewing courts presume that it will be inequitable or impractical to grant relief after substantial consummation of a plan of reorganization."); *In re Enron Corp.*, 326 B.R. 497, 502 (S.D.N.Y.2005); *In re Best Prods. Co.*, 177 B.R. 791, 803 (S.D.N.Y.1995); *In re Texaco Inc.*, 92 B.R. 38, 46 (S.D.N.Y.1988).

**5.** LSPC's opposition brief was served upon Loral on March 3, 2006, but was not filed with the Court until March 27, 2006. LSPC brought to the Court's attention that its opposition brief filed with the Court on March 27 contained corrections to typographical errors in the March 3 brief served upon Loral. After review of both the March 3 and March 27 LSPC briefs, counsel for Loral indicated to the Court that Loral consented to have its March 17, 2006 reply be deemed a reply to the March 27, 2006 LSPC brief filed with the Court.

Substantial consummation is defined under the Bankruptcy Code to mean:

(A) transfer of all or substantially all of the property proposed by the plan to be transferred;

(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

(C) commencement of distribution under the plan.

11 U.S.C. § 1101(2); *see also In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 144 (2d Cir.2005) *Texaco*, 92 B.R. at 46 n. 12.

■ Mootness has two aspects in the context of a bankruptcy appeal. First, Article III of the Constitution requires that there be a live case or controversy so that the court can grant effective relief. *See In re Best Prods. Co.*, 68 F.3d 26, 29–30 (2d Cir.1995); *In re Chateaugay Corp.*, 10 F.3d 944, 952 (2d Cir.1993) (*"Chateaugay II"*); *In re Chateaugay Corp.*, 988 F.2d 322, 325 (2d Cir.1993) (*"Chateaugay I"*). Second, equitable considerations provide that even if the court could conceivably fashion relief, the appeal should be dismissed as moot if implementation of that relief would be inequitable. *See Metromedia*, 416 F.3d at 143; *Best Prods.*, 68 F.3d at 30; *Chateaugay I*, 988 F.2d at 325.

These principles are "especially pertinent" in the bankruptcy context, "where the ability to achieve finality is essential to the fashioning of effective remedies." *Chateaugay I*, 988 F.2d at 325. It is for this reason that substantial consummation of a reorganization plan will often moot an appeal. *See, e.g., Metromedia*, 416 F.3d at 144 ("Equitable mootness is a prudential doctrine that is invoked to avoid disturbing a reorganization plan once implemented."); *Chateaugay I*, 988 F.2d at 326 ("As a practical matter, completed acts in accordance with an unstayed order of the bank-

ruptcy court must not thereafter be routinely vulnerable to nullification if a plan of reorganization is to succeed."); *Texaco*, 92 B.R. at 45 ("When a confirmed plan of reorganization is involved, ... it is not hard to imagine that hundreds or even thousands of good-faith transactions by innocent parties may be undertaken in reliance thereon before an appeal is decided on the merits. Under such circumstances, it would be manifestly unjust to reverse on appeal....").

■ The failure to seek a stay of the confirmation order pending appeal, with the result that the reorganization is substantially consummated, in particular lends itself to a finding that an appeal is moot. *See Texaco*, 92 B.R. at 46 ("Under these circumstances there fairly exists a strong presumption that appellants' challenges have been rendered moot due to their inability or unwillingness to seek a stay.") (citation and quotation omitted); *accord Enron*, 326 B.R. at 502.

■ However, although a "momentous event," substantial consummation does not necessarily make it impossible or inequitable for a court to grant effective relief. *Chateaugay II*, 10 F.3d at 952. An appellant can overcome the presumption of mootness by establishing all of the following five factors (the *"Chateaugay* factors") set out by the Second Circuit in *Chateaugay II:*

(a) the court can still order some effective relief;

(b) such relief will not affect the reemergence of the debtor as a revitalized corporate entity;

(c) such relief will not unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court;

(d) the parties who would be adversely affected by the modification have notice

138

of the appeal and an opportunity to participate in the proceedings; and

(e) the appellant pursued with diligence all available remedies to obtain a stay of execution of the objectionable order[,] if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from.

*Id.* at 952–53 (citations and quotations omitted).

## B. *APPLICATION*

### 1. *The Reorganization Plan Has Been Substantially Consummated*

■ Loral has presented ample evidence that Reorganization Plan has been substantially consummated. Substantially all of the property proposed to be transferred, and all equity interests proposed to be cancelled, have been transferred and cancelled, respectively; the Reorganized Debtors have assumed all business operations and all property dealt with by the Reorganization Plan; and distributions under the plan have nearly been completed. LSPC freely acknowledges that these transactions have occurred and indeed admits that it did not even attempt to oppose consummation of the Reorganization Plan. It is clear, then, that the Reorganization Plan has been substantially consummated, creating a presumption that LSPC's appeal of the Bankruptcy Court's orders is moot.

### 2. *The Chateaugay Factors Have Not Been Met*

■ LSPC has not established each of the five *Chateaugay* factors necessary to rebut the presumption that its appeal is moot.

#### a. *It Is Highly Improbable that the Court Can Fashion Effective Relief*

Central to the issue of whether LSPC's appeal is moot is whether the Court can fashion effective relief. The Court's analysis of this issue is complicated by LSPC's failure to indicate exactly what relief it is seeking. The underlying appeal was not fully briefed. However, from LSPC's original Notice of Appeal, as well as arguments in its opposition brief, the Court deduces that LSPC is seeking a reopening of the confirmation proceedings so that LSPC can obtain additional discovery and inspect and re-value Loral's assets. LSPC states in its brief opposing dismissal that "[t]he only issue presented in the instant appeal is that the actions of the Court has [sic] systematically deprived the Debtors' shareholders' right to inspect Debtors' assets" (LSPC Opposition Br. at 5), and that the appeal was filed because the Bankruptcy Court "systematically deprived Debtors' shareholders the constitutional right to inspect and protect their property without disturbing necessary business affairs while Debtor was seeking Chapter 11 Bankruptcy Protection" (*Id.* at 6.). LSPC further states that "[a]t the core of the instant appeal is the belief that the Plan of Reorganization cannot comply with (11 U.S.C. section 1129(a)(1)) until practical, reasonable and just inspection procedures under Rule 2004 (or of a full compliance of a Request for the Production of Documents) can provide empirical values of debtors' assets. The objective in such an inspection is to replace the unreliable and extremely broad range of estimates presented during the Confirmation Hearing with empirical evidence of the true value of Debtors' assets." (*Id.* at 7.) LSPC puts forth several hypothetical calculations as to what the valuation should or could have been, and indicates that it needs discovery and inspection of Loral's assets to prove its case. (*See id.* at 9–14.) *See also* Notice of Appeal at 9 (stating that the issues on appeal are (1) due process violations; (2) improper reliance on the business judgment rule; and (3) omissions and selective

application of facts that constitute clearly erroneous application of the facts to the law); *id.* at 2 (arguing that the Bankruptcy Court violated appellants' due process and equal protection rights by not allowing them to "inspect their property"); *id.* at 3 (arguing that the Bankruptcy Court wrongfully relied on Loral's estimates, thus causing a "significant understatement of values" of certain Loral assets and an erroneous ruling "that the Debtor was insolvent and hence in favor of the proposed Debtor/Creditor cram down that eliminates the common shareholders of Loral").

The Court thus concludes that LSPC seeks to reopen the confirmation proceedings for a re-valuation of all the assets that were distributed pursuant to the Reorganization Plan, and redistribution of such assets should the reevaluation prove different. Although Loral concludes its opposition brief with a request for an order "to reopen the confirmation hearing of Debtors' confirmation plan such that no actions that have been consummated be disturbed" (LSPC Opposition Br. at 18), the Court does not see how the requested relief would not disturb the numerous consummated transactions and further transactions taken in reliance thereon. Even if the Court could order such relief, this would raise, as will be discussed below, substantial equitable concerns addressed by two other *Chateaugay* factors: affecting the re-emergence of the debtor as a revitalized corporate entity, and unraveling intricate transactions in a way that creates an unmanageable, uncontrollable situation for the Bankruptcy Court.

b. *The Relief Sought Will Affect the Re–Emergence of the Debtor as a Revitalized Corporate Entity and Will Unravel Intricate Transactions so as to Create an Unmanageable Situation for the Bankruptcy Court*

*Chateaugay II* also requires that to overcome the presumption of mootness generated by substantial confirmation of a reorganization plan, appellants must establish that the requested relief "will not affect the re-emergence of the debtor as a revitalized corporate entity" and "will not unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court." 10 F.3d at 953 (citation and quotation omitted). The Court finds that the relief sought by LSPC would cause both of these events to occur.

First, to reopen the confirmation plan would result in the reinstatement of over $1.3 billion of indebtedness that the Reorganized Debtors are incapable of servicing. (Zahler Decl. ¶ 12.) This likely would have a ripple effect, creating a loss of confidence among New Loral's customers, vendors, and other business partners and leading to the Reorganized Debtors' breach of existing contractual relationships. (*Id.*) This would in turn lead to loss of revenues, inability to secure new contracts, and cash flow problems threatening the viability of New Loral.

Second, reopening the proceedings and unwinding the transfers and transactions that have taken place as part of the Reorganization Plan and in subsequent reliance on the Reorganization Plan, so that the Bankruptcy Court can revalue the debtors assets and redistribute accordingly, would clearly "knock the props out from under the authorization for every transaction that has taken place." *Chateaugay II*, 10 F.3d at 953 (citation and quotation omitted). Conceivably, the Debtors would have to attempt to recover $81.2 million in cash distributions to hundreds of creditors; New Loral stock that has been trading on NASDAQ for several months would have

to be cancelled and de-listed; satisfied claims and cancelled equity interests would have be reinstated; asset transfers and sales implemented under the Reorganization Plan would have to be unwound; and complications related to the liquidation proceedings of Loral Ltd. and Loral Licensing, Ltd. would arise in the Supreme Court of Bermuda. (Zahler Decl. ¶ 13.) Moreover, recovery of the $81.2 million in cash distributions would be difficult and involve additional expense, and thus assets available for distribution to creditors would be reduced. (*Id.* ¶ 14.) To order a reopening of the confirmation proceedings would thus clearly create an unmanageable situation for the Bankruptcy Court. Quite simply, too many transactions have taken place at this point to grant LSPC the relief it seeks. *See, e.g., In re Home Holdings, Inc.,* No. 98 Civ. 5690, 2001 WL 262750, at *6 (S.D.N.Y. Mar. 16, 2001) ("Like other substantially consummated complex reorganizations, [the] reorganization here affects numerous parties, including various classes of creditors and shareholders, and involves a multitude of complex transactions making tinkering with the Plan impracticable."); *In re E–II Holdings Inc.,* No. 94 Civ. 2246, 1995 WL 387650, at *5 (S.D.N.Y. June 30, 1995) (finding appeal moot when consummated transactions "included, among other things, over a billion dollars of transfers from the debtor to its creditors, the procurement of financing for the post-bankruptcy corporation, and the issuance of stock and other securities in the post-bankruptcy corporation"); *In re Ionosphere Clubs, Inc.,* 184 B.R. 648, 652 (S.D.N.Y.1995) ("The appellants do not seek to modify a discrete aspect of the Plan that would leave the remainder of the Plan intact. Rather, the appellants challenge the Plan in its entirety—they seek to undo sales of assets made both prior to and following the confirmation of the Plan."); *see also In re Fours On Seventh,*

*LLC,* 251 B.R. 784, 794 (S.D.N.Y.2000)("[B]ecause mootness analysis focuses on the impact that reversal of a consummated plan would have on third parties, cases where appeals are found to be moot often involve a ... [large] number of creditors and transactions.").

c. *The Parties Who Would Be Adversely Affected by Modification Have Not Had Notice of the Appeal and an Opportunity to Participate*

To overcome the presumption of mootness, *Chateaugay II* also requires that the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings. 10 F.3d at 953. Here, those who would be adversely affected include the Reorganized Debtors' creditors, customers, vendors, and others who participated in and relied upon transactions approved in the Reorganization Plan and subsequently completed, and the further transactions taken in reliance thereon. There is no indication on the record nor even an assertion by LSPC that these parties have been notified of the appeal and been given an opportunity to participate in these proceedings. Thus, this factor also weighs toward a finding that LSPC's appeal is moot.

d. *LSPC Did Not Seek a Stay*

■ Under *Chateaugay II,* the appellant seeking to overcome the presumption that its appeal of a bankruptcy confirmation order is moot must have "pursued with diligence all available remedies to obtain a stay of execution of the objectionable order[,] if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from." 10 F.3d at 953 (citation and quotation omitted). LSPC concedes that it did not seek a stay, but wrongly asserts that there was "abso-

lutely no requirement and absolutely no need to seek a stay of the Confirmation Order." (LSPC Opposition Br. at 5) In fact, seeking a stay is of the utmost importance to an appellant desiring to preserve an appeal of a confirmation order. *See Metromedia,* 416 F.3d at 144 (noting that whether the appellant sought a stay of confirmation is a "chief consideration" under *Chateaugay II*). The Second Circuit "insist[s] that a party seek a stay even if it may seem highly unlikely that the bankruptcy court will issue one." *Id.; see also Chateaugay I,* 988 F.2d at 326 ("The party who appeals without seeking to avail himself of that protection does so at his own risk."); *Texaco,* 92 B.R. at 46.[6]

Where, as here, the appellant failed to seek a stay, the court will "consider additionally whether that failure renders relief inequitable." *Metromedia,* 416 F.3d at 144. The question "is not solely whether [the Court] *can* provide relief without unraveling the Plan, but also whether [the Court] *should* provide such relief in light of fairness concerns." *Id.* at 145. Here,

in the absence of a stay, countless transactions involving numerous parties and millions of dollars, as set forth above, have taken place in furtherance of and in reliance on the Reorganization Plan. Upsetting these intricate transactions and numerous reliance interests in the absence of an attempt to seek a stay would be inequitable. *See, e.g., Enron,* 326 B.R. at 504 (finding, when appellant did not seek stay, that it "would be manifestly inequitable at this late stage to modify even this one provision of the Plan that so many parties have relied upon in making various, potentially irrevocable, decisions"); *In re Sunbeam Corp.,* No. 03 Civ. 536, 2004 WL 136941, at *3 (S.D.N.Y. Jan. 27, 2004) (dismissing two *pro se* appeals of confirmation order when reorganization had been substantially consummated and one appellant mailed a motion to stay after the deadline to move for a stay had passed, while the other never requested a stay); *Texaco,* 92 B.R. at 46, 51, 54 (dismissing appeal after reorganization had been substantially con-

---

**6.** The only evidence remotely suggesting that LSPC attempted to seek some form of expedited review is a September 14, 2005 letter to the Court from Phil Ivaldy, requesting an "emergency conference call" based on the concern that Loral "will run out of operating funds in October 2005 and because if this appeal proceeds as scheduled Loral will certainly oppose any and all appeals on the grounds that irreparable harm will be suffered by Loral Ltd." No such conference call took place, and no other requests for any expedited proceedings were received. LSPC does not argue that this letter was an attempt to seek a stay and concedes in its brief that it did not seek a stay. However, even if the Court were to construe LSPC's *pro se* pleadings liberally enough to consider this letter an attempt to stay the confirmation order or seek expedited review, the Court further finds that this single letter does not demonstrate that LSPC "pursued *with diligence all available remedies* to obtain a stay." *Chateaugay II,* 10 F.3d at 953 (citation and quotation omitted) (emphasis added). In this regard, the Court

notes that a review of the docket for a previous appeal *before* Judge Patterson of a bankruptcy court order involving Loral and LSPC reveals that LSPC sought both a stay pending appeal and expedited review of the appeal. It did so first through a letter to Judge Patterson; then, in response to Judge Patterson's instructions that the motion must be served with a notice of motion and supporting memorandum of law, LSPC filed a motion seeking a stay or an expedited hearing, thus belying any suggestion that LSPC did not know of the procedures for seeking a stay. *See* Docket, *In re Loral Space & Communications Ltd.,* No. 04 Civ. 8645(RPP) (S.D.N.Y.) (Docket No. 7 (Letter from Appellant, filed Nov. 16, 2004); Docket No. 34 (Endorsed Letter, filed Nov. 22, 2004); Docket No. 6 (Motion for Stay, filed Nov. 23, 2004)). After the motion for a stay was denied, LSPC sought an expedited hearing, demonstrating more diligent pursuit of expedited review than in this case. *See id.* (Docket No. 10 (order setting expedited hearing schedule in response to letter from LSPC)).

summated and appellants had not sought a stay). The relief sought by LSPC would create a situation of major uncertainty. LSPC, having not sought a stay, bears the burden of this uncertainty. *See Metromedia,* 416 F.3d at 145; *Chateaugay I,* 988 F.2d at 326.

### 3. *The Strike Appeal Is Also Moot*

 Because the Court finds that LSPC's appeal of the Confirmation Order and Denial Order is moot, it also finds that the Strike Appeal should be dismissed as moot, as it concerns which documents should be considered as part of the record on this appeal. Since the Court is dismissing this appeal as moot, there is no need to decide which documents should be part of the record on appeal.

## III. ORDER

For the foregoing reasons, the Court finds that the appeal of Loral Stockholders Protective Committee ("LSPC") is moot. Accordingly, it is hereby

**ORDERED** that the motion [Docket No. 6] of appellees Loral Space & Communications Ltd. and its affiliated reorganized debtors and debtors in possession to dismiss LSPC's appeal of the Bankruptcy Court's August 1, 2005 orders confirming the Fourth Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code and denying the Official Committee of Equity Security Holders leave prosecute a fraudulent conveyance claim is GRANTED; and it is further

**ORDERED** that LSPC's appeal [Docket No. 1] of the Bankruptcy Court's August 1, 2005 orders is DISMISSED; and it is finally

**ORDERED** that LSPC's appeal [Docket No. 2] of the Bankruptcy Court's October 3, 2005 order striking certain items from the record on appeal is DISMISSED.

The Clerk of Court is directed to close this case.

**SO ORDERED.**