# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
December 14, 2009

Charles R. Fulbruge III
Clerk

No. 09-20213

In the Matter of: SUPERIOR OFFSHORE INTERNATIONAL, INC.

Debtor

_____

LOUIS E SCHAEFER, JR.; SCHAEFER HOLDINGS LP,

Appellants

v.

SUPERIOR OFFSHORE INTERNATIONAL, INC; OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF SUPERIOR OFFSHORE INTERNATIONAL, INC,

Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, Chief Judge, and SMITH and DeMOSS, Circuit Judges.

EDITH H. JONES, Chief Judge:

Louis E. Schaefer, Jr. and Schaefer Holdings, LP (collectively, the "Appellants") appeal the bankruptcy court's confirmation of Superior Offshore International, Inc.'s Chapter 11 liquidation plan. Because the plan satisfies the Bankruptcy Code provisions governing treatment of unliquidated securities suit

claims, shareholder interests, and unsecured claims, the confirmation order is AFFIRMED.

## I. BACKGROUND

Before bankruptcy, Superior provided subsea design, construction, and commercial diving services to oil and gas industry entities. Initially, Superior was privately held by Schaefer Holdings. In 2007, Superior conducted an initial public offering and Schaefer sold a significant amount of his holdings. Within one year of the IPO, Superior filed a Chapter 11 bankruptcy petition. The parties quickly agreed that a liquidation was the best course of action. Pursuant to the bankruptcy court's orders, Superior sold all of its tangible assets for cash and subsequently filed a reorganization plan (the "Plan"). Superior retained intangible assets that were potentially valuable. It was and remains unclear how much money the estate will ultimately generate.[1] To account for the uncertainty, the Plan created a liquidation waterfall. After providing for priority claims, the Plan stated that unsecured claims (Class 5) would be paid first. If liquidating the intangible assets generated additional proceeds, then subordinated unsecured claims (Class 6) would receive value. If Class 6 received 100% of its claims, then equity interests (Classes 7 and 8) would receive any additional value.

Class 7 comprises securities litigation claims. Just before Superior filed for bankruptcy, several shareholders alleged that Superior's IPO violated the Securities Act of 1933 due to misrepresentations made by the registration statement and Superior's officers, including Mr. Schaefer. These cases were

---

[1]While it was highly speculative whether the Plan would generate sufficient cash to satisfy all unsecured claims, it is increasingly likely that there will be some money left for equity priority classes. As of oral argument, nearly 90% of unsecured claims are satisfied.

consolidated.[2] When Superior filed for bankruptcy, the consolidated lawsuit was stayed. The Plan allows shareholders to pursue their claims, establishing a Post-Confirmation Equity Subcommittee ("the Subcommittee") to review, prosecute, and settle all the Class 7 claims. The Plan listed the Subcommittee's duties, named the two members of the Subcommittee, and explained how members of the Subcommittee would be appointed and compensated.

Classes 7 and 8 have equal priority. Class 8 is composed of equity interests (common stock shares). Despite holding litigation claims, Class 7 is also equity-level priority. Unlike other litigation claims, the Bankruptcy Code does not treat securities claims as general unsecured claims. 11 U.S.C. § 510(b). The Plan accordingly states that if all superior claims are satisfied, Classes 7 and 8 will share any surplus proceeds pro rata. However, the Plan expresses no formula for converting Class 7 claims to comparable units of Class 8 interests; Class 7 is denominated in dollars, while Class 8 is denominated in shares.[3] The

---

[2]*In re: Superior Offshore International, Inc. Securities Litigation*, Civil Action No. 08-cv-00687, is pending in the United States District Court for the Southern District of Texas.

[3]The Plan itself states:

Class 7 - Subordinated Securities Claims. Each holder of an Allowed Class 7 Subordinated Securities Claim shall look first to the proceeds of the Debtor's available insurance policies for satisfaction of its Claim to the extent that such Claim is covered by insurance. Any remaining unpaid Allowed Class 7 Subordinated Securities Claim shall receive a Pro-Rata share, in accordance with procedures that shall be established by further order of the Bankruptcy Court upon motion of the Post-Confirmation Equity Subcommittee, with all Allowed Class 8 Interests of all remaining Available Cash and Plan Agent Recovery after payment in full, with interest as provided herein, of all Class 1, 2, 3, 4, 5 and 6 Claims.

Class 8 - Interests. All Equity Interests shall be canceled as of the Effective Date. Holders of Allowed Equity Interests shall receive a Pro-Rata

Plan provides that a conversion mechanism will be determined only if proceeds are sufficient to satisfy all senior classes.

The Plan was unanimously accepted by all other classes of creditors casting votes and by a majority vote of the shareholders. Apparently, only the Appellants, who owned half of Superior's stock, voted against the Plan. Their equity class (Class 8) became a non-consenting class. Appellants objected to the Plan on two grounds. First, because the Plan offered no method to convert Class 7 claims to Class 8 interests, it violated 11 U.S.C. § 1123(a)(3). Second, the Plan did not sufficiently reveal the affiliations of the Subcommittee members as required by 11 U.S.C. § 1129(a)(5)(A)(i). After a confirmation hearing, the bankruptcy court overruled Appellants' objections and confirmed the Plan pursuant to cramdown procedures. *See* 11 U.S.C. § 1129(b). Appellants appealed and the bankruptcy court certified its confirmation order for direct appeal to this court. 28 U.S.C. § 158(d). However, the bankruptcy court did not stay the confirmation order and the Plan became effective February 11, 2009.

## II. EQUITABLE MOOTNESS

Before discussing the merits of the case, this court must first briefly address the issue of equitable mootness. "Equitable mootness is a kind of appellate abstention that favors the finality of reorganizations and protects the interrelated multi-party expectations on which they rest." *In re Pacific Lumber*

---

share with all Allowed Class 7 Claims remaining after application of any available insurance proceeds of all remaining Available Cash and Plan Agent Recovery after payment in full, with interest as provided herein, of all Class 1, 2, 3, 4, 5 and 6 Claims. The Post-Confirmation Equity Subcommittee will file a motion with the Bankruptcy Court seeking to establish distribution procedures and rights relative to Class 7 Claims and Class 8 Interests.

The Plan, paragraphs 5.4, 5.5.

*Co.,* 584 F.3d 229, 240 (5th Cir. 2009). When determining whether a bankruptcy issue is equitably moot, the court considers "(1) whether a stay was obtained, (2) whether the plan has been 'substantially consummated,' and (3) whether the relief requested would affect either the rights of parties not before the court or the success of the plan." *In re Manges*, 29 F.3d 1034, 1039 (5th Cir. 1994). Here, the first and third factors predispose toward equitable mootness, but the doctrine does not prevent this court from addressing the issues on appeal. One important consideration is whether the court can fashion effective relief without interfering with the finality of a confirmed plan. *Pacific Lumber*, 584 F.3d at 24. Although the Appellants seek reversal of the confirmation order, their complaints center on increased disclosure about the Subcommittee members and on specificity about how Class 7 and Class 8 will share in any money available for equity-level interests. Remedies can be crafted for these deficiencies without completely undoing the Plan.[4] Under these circumstances, equitable mootness does not apply.

## III.  DISCUSSION

Appellants raise issues of law on appeal. This court reviews bankruptcy courts' conclusions of law *de novo. In re Berryman Prods. Inc.*, 159 F.3d 941, 943 (5th Cir. 1998).

### A.    Failure to provide a conversion method

Several of Appellants' objections to the Plan rest on a single alleged infirmity: the Plan does not express a method to convert Class 7 claims into Class 8 shareholder interests. Under § 1123(a)(3), a Plan must "specify the treatment of any class of claims or interests that is impaired under the plan"

---

[4]Moreover, the absolute priority issue raised by Appellants is meritless.

before it can be confirmed. 11 U.S.C. § 1129(a)(1). The Plan provides that Classes 7 and 8 will share any remaining liquidation proceeds pro rata, but as noted above, it specifies no mechanism to convert Class 7 claims (denominated in dollars) into Class 8 interests (denominated in shares). Appellants contend that without a conversion mechanism, the Plan fails to comply with § 1123(a)(3).

Whether the Bankruptcy Code requires a Chapter 11 plan to provide an explicit conversion mechanism between subordinated securities claims and equity interests seems to be an issue of first impression. We suspect this is because equity interests so rarely receive any payment following a corporate bankruptcy. The court approved the Plan language only after the parties failed to reach agreement on a conversion formula between Class 7 claims and Class 8 interests. Neither the failure to agree nor the decision to resolve conversion at a later date is surprising or subject to criticism. Class 7 claimants are required to look first to directors' and officers' insurance proceeds to satisfy their claims. Only after insurance proceeds are paid and further litigation occurs will the overall size and individual claims of Class 7 members be known. The interrelation of Classes 7 and 8 is contingent and presently unknowable. The court's decision to approve a plan that provides, at the end of the day, for statutorily correct pro rata treatment of Classes 7 and 8, adjudicated in an adversary proceeding if necessary, furnished adequate specificity and complied with § 1123(a)(3).[5]

As the Appellees explain, the Plan identified the source of distributions, the proportionate share of distributions among classes, and the respective

---

[5]Moreover, 11 U.S.C. § 502(c) authorizes the court to estimate claims for various purposes in bankruptcy. Appellants could have sought a § 502(c) hearing to estimate the value of Class 7 claims. They did not do so, however, so the issue is waived.

priority of distributions. The post-confirmation procedure approved by the court deals with the allowance of Class 7 and 8 claims and interests, rather than their treatment. This situation is no different from a plan that states that "all" unsecured claims will share in the proceeds from sales of assets. The class of unsecured claims typically includes some that are unliquidated or contingent. A party to a rejected executory contract with the debtor, for instance, would have to liquidate his damages, possibly in an adversary proceeding, before receiving compensation from the plan. 11 U.S.C. § 502(g). Other unsecured creditors would not know their pro rata recovery until the unliquidated claim becomes fixed. Despite the uncertainty and lack of an articulated ex ante formula to convert the executory contract's damages into dollars, however, there is no impediment to confirming a reorganization plan with unsecured claims treated in this way.

Appellants also contend that the absence of a conversion mechanism violates 11 U.S.C. § 1123(a)(4), which requires that the Plan "provide the same treatment for each claim or interest of a particular class" unless the holder agrees to less favorable treatment. According to Appellants, without a conversion mechanism for Classes 7 and 8, the parties cannot determine if this provision will be fulfilled. This argument is meritless. Section 1123(a)(4) only requires equal treatment of members within the same *class.* Despite having equal priority, Class 7 and Class 8 are different classes, and the Plan treats them "pro rata" as required by 11 U.S.C. § 510(b).

**B.    Subcommittee members' disclosures**

Appellants next assert that the Plan does not comply with 11 U.S.C. § 1129(a)(5)(A)(i) because it fails to disclose the affiliation of the Equity

Subcommittee members who will be responsible for pursuing the securities litigation to conclusion. Section 1129(a)(5)(A)(i) requires a Plan to disclose:

> the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan

The Subcommittee members hold none of these positions. Accordingly, the Plan does not violate § 1129(a)(5)(A)(i).

## C. Absolute Priority Rule

Appellants' final contention is that the plan violates the absolute priority rule because Class 5 (unsecured claims) is impaired, while Classes 7 and 8 receive property (causes of action) from the estate. The law is settled contrary to their position. Because Class 5 voted in favor of the plan, the absolute priority rule unambiguously does not apply to Class 5 claims. *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 202, 108 S. Ct. 963, 966 (1988) ("the absolute priority rule provides that a *dissenting class* of unsecured creditors must be provided for in full before any junior class can receive or retain any property under a reorganization plan") (internal quotation and citations omitted) (emphasis added).

## CONCLUSION

Although it delays measuring Class 7 claims, the Plan properly specifies the treatment of Classes 7 and 8 and otherwise complies with 11 U.S.C. §§ 1123(a)(3), 1123(a)(4), and 1129(a)(1). Appellants' other objections to the Plan are meritless. Accordingly, the judgment of the bankruptcy court is **AFFIRMED**.