# United States Court of Appeals
## FOR THE SECOND CIRCUIT

August Term, 2013

(Argued: May 14, 2014    Decided: October 29, 2014)

Docket Nos. 13-2226-bk, 13-2288-bk, 13-2300-bk

IN RE: BGI, INC. f/k/a BORDERS GROUP, INC.,

*Debtor*.

ERIC BEEMAN, JANE FREIJ, and ROBERT TRAKTMAN,

*Appellants*,

–v.–

BGI CREDITORS' LIQUIDATING TRUST, CURTIS R. SMITH,
in his capacity as the Liquidating Trustee,

*Appellees*.

B e f o r e :

KEARSE, STRAUB, and CARNEY, *Circuit Judges*.

Appeal from a May 28, 2013 judgment of the United States District Court for the Southern District of New York (Andrew L. Carter, Jr., *Judge*) dismissing as equitably moot appeals filed by Appellants Eric Beeman, Jane Freij, and Robert Traktman from three orders issued by the Bankruptcy Court (Martin Glenn, *Bankruptcy Judge*) in the Chapter 11 liquidation proceedings of debtor BGI, Inc., f/k/a Borders Group, Inc.  The Bankruptcy Court orders:  (1) denied Beeman and Freij's motion for leave to file late proofs of claim; (2) rejected and discharged Traktman's untimely proof of claim; and (3) denied as moot Beeman, Freij, and Traktman's motion for class certification.  We conclude that the doctrine of equitable mootness applies in Chapter 11 liquidations, and that Appellants have not overcome the presumption that their appeals, which relate to a substantially consummated liquidation plan, are equitably moot.  Accordingly, we AFFIRM the judgment of the District Court dismissing the appeals.

AFFIRMED.

———————

CLINTON A. KRISLOV (Kenneth T. Goldstein, *on the brief*), Krislov & Associates, Ltd., Chicago, Illinois, and Jay Teitelbaum, Teitelbaum & Baskin, LLP, White Plains, New York, *for Appellants*.

BRUCE D. BUECHLER (Andrew D. Behlmann, *on the brief*), Lowenstein Sandler LLP, Roseland, New Jersey, *for Appellees*.

———————

SUSAN L. CARNEY, *Circuit Judge*:

In these appeals that were consolidated for argument, holders of unredeemed consumer gift cards issued by the former book retailer BGI Inc., f/k/a Borders Group, Inc. and its affiliates ("Borders" or "Debtors") seek to vacate

2

a May 28, 2013 judgment of the District Court (Andrew L. Carter, Jr., *Judge*) dismissing as equitably moot Appellants' challenges to three Bankruptcy Court orders.

In the three challenged orders, the Bankruptcy Court (Martin Glenn, *Bankruptcy Judge*) denied motions filed by Appellants after Borders—which had earlier filed for protection under Chapter 11—obtained confirmation of its liquidation plan (the "Plan"). In those orders, the Bankruptcy Court found that the Plan was substantially consummated, and (1) denied the motion of Appellants Eric Beeman and Jane Freij for leave to file untimely proofs of claim; (2) rejected and discharged Appellant Robert Traktman's untimely proof of claim; and (3) denied as moot the motion for class certification pursued by all three Appellants, none of whom appeared in the case until after the Plan was confirmed. *See In re BGI, Inc.*, 476 B.R. 812 (Bankr. S.D.N.Y. 2012) ("*BGI I*"); Joint Appendix ("JA") 700.

On review, the District Court accepted the Bankruptcy Court's determination that the Plan was substantially consummated and accordingly found Appellants subject to a presumption that their appeals were equitably moot. Concluding further that Appellants had failed to overcome that

3

presumption, the District Court dismissed the appeals. *See In re BGI, Inc.*, Nos. 12 Civ. 7714 (ALC), 12 Civ. 7715 (ALC), 13 Civ. 0080 (ALC), 2013 U.S. Dist. LEXIS 77740 (S.D.N.Y. May 22, 2013) ("*BGI II*").

We AFFIRM the District Court's ruling. At the threshold, we hold that the analysis outlined in *Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944 (2d Cir. 1993) ("*Chateaugay II*")—which governs our Circuit's equitable mootness analysis in Chapter 11 reorganizations—also governs our mootness analysis in Chapter 11 liquidations. We then conclude that Appellants are subject to the presumption of mootness created by the liquidation Plan's substantial consummation, and have failed to satisfy the five *Chateaugay* factors, as would be necessary to rebut that presumption. Accordingly, we hold that the District Court acted within its discretion in dismissing these appeals as equitably moot.

## BACKGROUND

We recite only those facts necessary to this appeal. A full recitation of the facts may be found in the Bankruptcy Court and District Court opinions. *BGI I*, 476 B.R. at 815-20; *BGI II*, 2013 U.S. Dist. LEXIS 77740, at *1-17.

4

Each Appellant holds an unused consumer gift card issued by Borders, the now-defunct retail bookstore chain. In February 2011, Borders and certain of its affiliates filed voluntary petitions for relief through reorganization under Chapter 11 of the Bankruptcy Code. 11 U.S.C. § 1101, *et seq.* In April 2011, the Bankruptcy Court entered an order (the "Bar Date Order") establishing June 1, 2011 (the "Bar Date"), as the deadline for claims to be filed by purported creditors of Borders on debts arising before Borders filed its bankruptcy petition (the "prepetition creditors"). Pursuant to Bankruptcy Rule 2002,[1] the Bar Date Order required Borders to notify potential prepetition creditors of the bankruptcy proceedings in several ways, including by publishing notice of the Bar Date in the national edition of *The New York Times* at least twenty-eight days before the Bar Date, and by serving notice of the Bar Date via first-class mail to, among others, "all known creditors and other known holders of claims." No appeal was taken from the Bar Date Order.

After filing its February 2011 petition, Borders attempted to reorganize as a going concern, but those efforts were unsuccessful, and in July 2011, the

---

[1] Bankruptcy Rule 2002, entitled "Notices to Creditors, Equity Security Holders, [and others]," governs, *inter alia*, how a debtor must provide notice to creditors in a bankruptcy action. *See* Fed. R. Bankr. P. 2002.

5

Bankruptcy Court authorized Borders to proceed under Chapter 11 to liquidate substantially all of its assets and completely close the chain of stores.[2] On September 20, 2011, Borders closed the last of its retail branches. One week later, it stopped accepting gift cards and conducting e-commerce on its website. Gift card redemptions constituted nearly one hundred percent of Borders' net sales in the last month of the chain's operations.

With its goal changing from reorganization to liquidation, in November 2011 Borders filed a Chapter 11 liquidation plan under section 1125 of the Bankruptcy Code, together with the required Disclosure Statement, which is designed to permit interested parties to evaluate the proposed plan. 11 U.S.C. § 1125(b). The Bankruptcy Court approved Borders' proposals for soliciting votes on the Plan, disseminating the Disclosure Statement, and giving notice of

---

[2] The Debtors' November 2011 Disclosure Statement reported that the company through its subsidiaries operated 642 stores and that, "[f]or the fiscal year ended January 29, 2011, the Debtors . . . recorded net sales of approximately $2.3 billion." JA 144-45. They reported cash on hand of $90 million, and remaining assets of some $30 million that were slated for liquidation. JA 157. As to creditors' recoveries, the Debtors estimated 100% recovery as to allowed amounts of $7.4 to $13.9 million in priority tax claims and up to $2 million of allowed secured claims. JA 143. Debtors estimated recovery of only 4 to 10% for creditors holding allowed general unsecured claims, which totaled $812 to $850 million. This figure did not include the $210.5 million in unredeemed balances associated with approximately 17.7 million gift cards then outstanding. JA 143, 429.

the Plan confirmation hearing.[3]  The Bankruptcy Court also required Borders to provide notice of the confirmation hearing to all other interested parties via publication in *The New York Times*.  This notice was published on November 16, 2011.  The hearing was scheduled for December 20, 2011.

No Appellant filed an objection to the Plan before the confirmation hearing and none appeared at the hearing, which took place as scheduled, on December 20.  On the day after the hearing, the Bankruptcy Court entered an order confirming the Plan and directing that the Plan be put into effect on January 12, 2012 (the "Confirmation Order").[4]

Two weeks after the hearing—on January 4, 2012—Appellants Beeman and Freij moved the Bankruptcy Court for authorization to file untimely proofs of claim (the "Late Claims Motion"), arguing that they had not received adequate

[3] In particular, the Bankruptcy Court required Borders to disseminate by November 16, 2011, notice of the confirmation hearing to the following groups: (1) persons or entities identified in Borders' schedule of liabilities; (2) parties that had filed proofs of claim; (3) registered holders of Borders' debt and equity securities; and (4) any other "known holders of claims against" or equity interests in Borders.

[4] The Plan provided primarily that, as of the effective date, the Debtors would dissolve, and the Liquidating Trust—managed by the Liquidating Trustee under the supervision of a Liquidating Trust Committee—would liquidate the Debtors' remaining assets and make distributions to unsecured creditors after paying administrative, secured, and unsecured priority claims.  The Liquidating Trustee and the Liquidating Trust Committee were selected by the Official Committee of Unsecured Creditors, in consultation with the Debtors.  Pursuant to the Plan, holders of general unsecured claims were entitled to vote to accept or reject the Plan.  Of these creditors, 786—representing more than 97% of those creditors who cast votes—voted to accept the Plan.

notice of the bankruptcy proceedings or the Bar Date. Then, joined by Appellant

Traktman (who had simply filed a late claim without authorization), they asked

the court to certify a class of all holders of Borders gift cards issued prepetition

(the "Class Certification Motion"). Appellees BGI Creditors' Liquidating Trust

(the "Trust") and the Liquidating Trustee objected to both motions. Neither

Beeman, Freij, nor Traktman moved for a stay of the Plan in tandem with their

efforts to file late claims and certify a class.[5]

In August 2012, the Bankruptcy Court denied the Late Claims and Class

Certification Motions. In its memorandum opinion, the court first considered

whether, under Bankruptcy Rule 2002, gift card holders were individually

entitled to "actual notice" of the Bar Date. Answering "no," the court explained

that "known" creditors of a Chapter 11 debtor—a group that includes both

"claimant[s] whose identity is actually known to the debtor [and] claimant[s]

whose identity is reasonably ascertainable"—must be afforded "actual written

notice of the bankruptcy filing and the bar date." *BGI I*, 476 B.R. at 820 (internal

quotation marks omitted). By contrast, "unknown" creditors—whose identity is

---

[5] It was not until October 11, 2012—over ten months after the confirmation hearing—that Appellants first sought any kind of stay related to the Plan. On that date, Appellants filed a motion to stay interim distributions to creditors pending the District Court's adjudication of their appeals. On November 2, 2012, the Bankruptcy Court denied the stay motion and authorized the First Interim Distribution to general unsecured creditors pursuant to the Plan.

not reasonably ascertainable by the debtor—are entitled only to "constructive notice," which may be provided through notice by publication. *Id.* Determining that gift card holders were "unknown" creditors because their "status as possible creditors was not known or reasonably ascertainable,"[6] the court held that publication of the Bar Date once in *The New York Times* provided Appellants all the notice to which they were entitled. *Id.* at 821, 823-24.

The court reasoned that because Beeman and Freij failed to establish any entitlement to actual notice of the Bar Date, their neglect in failing to file timely proofs of claim was not "excusable" under Bankruptcy Rule 9006(b)(1).[7] *Id.* at 824-26. Its conclusion rested in part on its determination that the Plan had been substantially consummated. The court noted that as of August 2012, the Trust had already made distributions of approximately $17 million to holders of allowed administrative and priority claims, and it concluded that "allowing [Beeman and Freij] to file late claims and certifying a class of Gift Card holders

---

[6] The Bankruptcy Court found that Borders "had no reasonable method" for ascertaining gift card holders' "addresses or identifying information." *BGI I*, 476 B.R. at 823.

[7] Bankruptcy Rule 9006(b)(1) "gives the court the discretion to enlarge the time to file claims 'where the failure to act was the result of excusable neglect.'" *BGI I*, 476 B.R. at 824 (quoting Fed. R. Bankr. P. 9006(1)).

9

would have a disastrous effect on the remainder of the Debtors' estates and the final distributions of the Plan." *Id.* at 825.

Accordingly, the court denied their motion to file untimely claims. *Id.* at 826. It then denied as moot the motion for class certification. *Id.* at 826-27. The Bankruptcy Court similarly disallowed and expunged Traktman's untimely claim.

Appellants timely sought district court review of these orders. In an opinion issued in May 2013, the District Court dismissed all three appeals as equitably moot. This appeal followed.

## DISCUSSION

Equitable mootness is a prudential doctrine under which a district court may in its discretion dismiss a bankruptcy appeal "when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable." *In re Charter Commc'ns, Inc.*, 691 F.3d 476, 481 (2d Cir. 2012) (internal quotation marks omitted). The doctrine "requires the district court to carefully balance the importance of finality in bankruptcy proceedings against the appellant's right to review and relief." *Id.* We review a district court's dismissal on grounds of equitable mootness for abuse of discretion, *id.* at 483,

10

under which we examine conclusions of law de novo and findings of fact for clear error, *see Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748 n.2 (2014).

### A. Equitable Mootness in the Context of Chapter 11 Liquidation Proceedings

As an initial matter, we conclude that the doctrine of equitable mootness applies to appeals arising from Chapter 11 liquidation proceedings, as well as appeals from Chapter 11 reorganization proceedings.[8]  At oral argument, Appellants appeared to abandon the position—advanced in their briefs—that the doctrine of equitable mootness does not apply in this context.  Because the question has not yet been decided by our Court, however, we address it briefly here.

The doctrine of "equitable mootness" provides an analytical basis for dismissing certain appeals from bankruptcy court orders.  It was developed judicially "in response to the particular problems presented by the consummation of plans of reorganization under Chapter 11," in which "the need for finality, and the need for third parties to rely on that finality," is of

---

[8] Although "the central purpose of Chapter 11 is to facilitate reorganizations rather than liquidations (covered generally by Chapter 7), Chapter 11 expressly contemplates liquidations." *Florida Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 37 n.2 (2008).

11

paramount importance. *TNB Fin., Inc. v. James F. Parker Interests (In re Grimland, Inc.)*, 243 F.3d 228, 231 & n.4 (5th Cir. 2001) (explaining that the need for the doctrine "normally arises where a Chapter 11 reorganization plan is at issue").

Equitable mootness is a "pragmatic" doctrine, one that is "grounded in the notion that, with the passage of time after a judgment in equity and implementation of that judgment, effective relief on appeal becomes impractical, imprudent, and therefore inequitable." *Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 144 (2d Cir. 2005) (quoting *MAC Panel Co. v. Va. Panel Corp.*, 283 F.3d 622, 625 (4th Cir. 2002)). It admits of considerable flexibility, and its application depends on, and varies according to, the specific factors presented in a particular case. *See MAC Panel*, 283 F.3d at 625 ("[The doctrine's] application does not employ rigid rules.").

In our Circuit, a bankruptcy appeal is presumed equitably moot when the debtor's reorganization plan has been substantially consummated. *In re Charter Commc'ns, Inc.*, 691 F.3d at 482. "Substantial consummation," as defined by section 1101(2) of the Bankruptcy Code, requires "(A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the

business or of the management of all or substantially all of the property dealt with by the plan"; and, finally, "(C) commencement of distribution under the plan." 11 U.S.C. § 1101(2).

The presumption of equitable mootness created by a plan's substantial consummation can be overcome by an objector, however, if the five factors set out in our decision in *Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944 (2d Cir. 1993) ("*Chateaugay II*"), are satisfied.[9] As stated there, these factors are:

> [1] the court can still order some effective relief;
>
> [2] such relief will not affect the re-emergence of the debtor as a revitalized corporate entity;
>
> [3] such relief will not unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court;

---

[9] *Chateaugay II* involved an appeal from a bankruptcy court order approving a reorganization plan. 10 F.3d at 948. Certain creditors argued that their claims should have received administrative priority. Following the bankruptcy petition, the debtor's actions reduced the value of their claims, triggering certain other obligations. Because effective relief could still be fashioned and the creditors had satisfied their burden with respect to the other factors, we held that—despite the plan's substantial consummation—the creditors had rebutted the presumption of mootness and could maintain their appeal. In an earlier appeal in the same bankruptcy, we found, in contrast, that an appeal was properly dismissed as equitably moot. *See Official Comm. of Unsecured Creditors of LTV Aerospace & Def. Co. v. Official Comm. of Unsecured Creditors of LTV Steel Co. (In re Chateaugay Corp.)*, 988 F.2d 322 (2d Cir. 1993) ("*Chateaugay I*").

13

[4] the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings; and

[5] the appellant pursued with diligence all available remedies to obtain a stay of execution of the objectionable order[,] if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from.

*Id.* at 952-53 (internal quotation marks, citations, and alteration omitted). An analysis of these factors requires a court to "examine the actual effects of the requested relief," *In re Charter Commc'ns*, 691 F.3d at 482, and accounts for context-specific aspects of a given bankruptcy, *see Chateaugay II*, 10 F.3d at 949-50.

We see no principled reason, in a Chapter 11 liquidation proceeding, for denying a court discretion to apply the doctrine of equitable mootness and the corresponding *Chateaugay* analysis. In such a liquidation, affected parties may have devoted months of time and resources toward developing an acceptable plan; creditors with urgent needs may have been stayed from accessing assets and funds to which they are entitled; and extensive judicial resources may have been consumed. In liquidation as in reorganization, substantial interests may counsel in favor of preventing tardy disruption of a duly developed, confirmed, and substantially consummated plan.

14

Appellants have pointed to no persuasive precedent to support the contention that equitable mootness should not apply in the context of Chapter 11 liquidation proceedings. Indeed, to the contrary: several of our sister circuits have applied the doctrine in the liquidation setting and did so with no more than cursory discussion.[10] District courts in our Circuit have also applied the doctrine in Chapter 11 liquidations.[11] And, in several unpublished summary orders, our Court has already endorsed the doctrine's application in a range of contexts.[12] These cases suggest that the doctrine of equitable mootness has already been

[10] *See, e.g.*, *Schaefer v. Superior Offshore Int'l, Inc. (In re Superior Offshore Int'l, Inc.)*, 591 F.3d 350, 353-54 (5th Cir. 2009) (applying equitable mootness analysis to appeal of order confirming a Chapter 11 liquidation plan); *Zeeger v. President Casinos, Inc.* (*In re President Casinos, Inc.*), 409 F. App'x 31 (8th Cir. 2010) (dismissing as equitably moot appeal related to a Chapter 11 liquidation proceeding); *Sutton v. Weinman (In re Centrix Fin. LLC)*, 355 F. App'x 199, 201-02 (10th Cir. 2009) (remanding appeal to district court in a Chapter 11 liquidation proceeding to apply equitable mootness analysis); *Drawbridge Special Opportunities Fund, L.P. v. Shawnee Hills, Inc. (In re Shawnee Hills, Inc.)*, 125 F. App'x 466, 469-70 (4th Cir. 2005) (applying equitable mootness analysis in a Chapter 7 liquidation proceeding); *Hicks, Muse & Co. v. Brandt (In re Healthco Int'l, Inc.)*, 136 F.3d 45, 48-49 (1st Cir. 1998) (same); *Fitzgerald v. Ninn Worx Sr, Inc. (In re Fitzgerald)*, 428 B.R. 872, 881 (9th Cir. B.A.P. 2010) (same).

[11] *See, e.g.*, *ACC Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 367 B.R. 84, 96 (S.D.N.Y. 2007) (dismissing appeal as equitably moot in a Chapter 11 proceeding where the "Debtors have been liquidated and effectively cease to exist").

[12] For example, our Court has approved the doctrine's application in appeals of bankruptcy court orders denying motions to convert Chapter 11 reorganizations to Chapter 7 liquidations, *see Papas v. Residential Capital, LLC (In re Residential Capital, LLC)*, 560 F. App'x 100 (2d Cir. 2014); approving settlement agreements related to a debtor's estate in a Chapter 11 proceeding, *see Ad Hoc Adelphia Trade Claims Comm. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 222 F. App'x 7 (2d Cir. 2006); and ordering the sale of closely held real estate corporations in a Chapter 11 proceeding, *see Kassover v. Gibson (In re Kassover)*, 98 F. App'x 30 (2d Cir. 2004).

accorded broad reach, without apparent ill effect. *See Captain Hani Alsohaibi v. Arcapita Bank B.S.C.(c) (In re Arcapita Bank B.S.C.(c))*, Nos. 13 Civ. 5755 (SAS), 13 Civ. 5756 (SAS), 2014 WL 46552, at *5 (S.D.N.Y. Jan. 6, 2014) (explaining that the doctrine of equitable mootness "has been applied in a variety of contexts" (footnotes omitted)); *Cadle Company II, Inc. v. PC Liquidation Corp. (In re PC Liquidation Corp.)*, No. 06 Civ. 1935 (SJF), 2008 WL 199457, *5 (E.D.N.Y. Jan. 17, 2008) (explaining that "equitable mootness is not limited to appeals of orders confirming reorganization plans" and collecting cases).

Accordingly, we now hold that the doctrine of equitable mootness and the corresponding *Chateaugay* analysis apply in assessing appeals related to Chapter 11 liquidation proceedings as well as Chapter 11 reorganizations.[13]

**B. Application**

Having determined that the equitable mootness doctrine applies in the setting now before us, we have little difficulty in concluding that the District Court did not abuse its discretion in dismissing Appellants' appeals as equitably moot.

---

[13] As noted above, the instant appeal arises in the context of a Chapter 11 liquidation. Consequently, we leave to a future panel of our Court the question whether a district court may also invoke equitable mootness in the context of a Chapter 7 liquidation.

Here, the Bankruptcy Court found that, as of August 2012, the Plan had been substantially consummated. Its finding rested on the observation that, as of the Plan's effective date, Borders transferred its relevant property to the Trust, and the Trust began administering timely filed claims and making distributions to holders of allowed administrative and priority claims, in an amount totaling at least $17 million. *BGI I*, 476 B.R. at 825. We discern no clear error in this determination.[14] *See* 7 COLLIER ON BANKRUPTCY ¶ 1101.02[2] (Resnick & Sommer et al., 16th ed. 2009) ("Determining whether a plan has been substantially consummated is a question of fact . . . ."); *Babitt v. Vebeliunas (In re Vebeliunas)*, 332 F.3d 85, 90 (2d Cir. 2003) ("We review the bankruptcy court's findings of fact only for clear error . . . .").

As noted above, if an appellant satisfies the five factors outlined in *Chateaugay II*, 10 F.3d at 952-53, he may override the presumption of equitable mootness that is created by a plan's substantial consummation. "Only if all five *Chateaugay* factors are met, and if the appellant prevails on the merits of its legal claims, will relief be granted." *In re Charter Commc'ns*, 691 F.3d at 482.

---

[14] In any event, Appellants have forfeited any challenge to the Bankruptcy Court's finding of substantial consummation by failing to raise it in their opening brief. *See McCarthy v. SEC*, 406 F.3d 179, 186 (2d Cir. 2005).

Here, we agree with the District Court that Appellants failed to satisfy at least the fourth and fifth *Chateaugay* factors:  i.e., ensuring adequate process for parties who would be adversely affected, and demonstrating their own diligence in obtaining a stay.[15]  As to the fourth factor, Appellants did not establish that the general unsecured creditors—who "could be stripped of their entire recovery if the proposed class [was] certified," *BGI II*, 2013 U.S. Dist. LEXIS 77740, at *31— received notice of their appeal to the District Court.  As to the fifth factor, Appellants did not "pursue their claims with all diligence":  they did not appear at the Plan confirmation hearing, filed no objections to the Plan, and neither appealed the Confirmation Order nor sought a stay of the Plan's effective date.[16]

---

[15] The District Court found that Appellants had met their burden with respect to the first *Chateaugay* factor—whether the court "can still order some effective relief"—because it was theoretically possible to grant Appellants the relief they sought by providing some notice to those gift card holders who were identifiable (a subset of uncertain magnitude), and reopening the claims-filing period.  *BGI II*, 2013 U.S. Dist. LEXIS 77740, at *23-24.  All parties agreed that the second *Chateaugay* factor—whether such relief will "affect the re-emergence of the debtor as a revitalized corporate entity"—was inapplicable because Borders liquidated its assets and would not emerge as a new corporate entity.  *Id.* at *24-25.

The District Court described the third *Chateaugay* factor—whether the relief Appellants seek would require unraveling complex transactions undertaken after the Plan was consummated—as a "close[] question."  *Id.* at *30.  Observing that the transactions in a liquidation proceeding may not be as complex as those in a reorganization proceeding, the court nonetheless predicted, persuasively, that allowing Appellants to file late claims and certifying a class of gift card holders would have "a disastrous effect" on the remainder of the liquidated estate and the distributions under the Plan.  *Id.* (quoting *BGI I*, 476 B.R. at 825).

[16] As noted above, on October 11, 2012, Appellants moved to stay interim distributions to

18

*See id.* at *32-33 ("The fact that no stay of distributions was sought by Appellants until almost a year after they entered the bankruptcy litigation and the Plan was confirmed indicates the lack of diligence with which Appellants moved."); *see also In re Metromedia Fiber*, 416 F.3d at 144-45 (relying on a failure to seek a stay of the confirmation order and a failure to seek expedited review of the order to uphold the district court's finding of equitable mootness).[17]

Accordingly, we see no basis for concluding that the District Court abused its discretion by dismissing the appeals as equitably moot.[18]

---

creditors pending the District Court's adjudication of their appeals. *See supra* note 5.

[17] We note, also, that the record appears to establish that at least one of the Appellants consulted counsel with respect to his or her possible claims as early as December 5, 2011—over two weeks before the scheduled confirmation hearing. Yet neither counsel nor that Appellant attended the confirmation hearing, and, indeed, the first appearance made on Appellants Beeman and Freij's behalf in the Bankruptcy Court proceedings was dated January 4, 2012, one month later, in the form of a motion for leave to file late claims.

[18] Appellants have filed two motions pursuant to Fed. R. App. P. 10(e)(3) to supplement the record on appeal. They proposed adding five documents that the Trust filed in the Bankruptcy Court after the District Court issued its May 2013 opinion, as well as a copy of one of these documents that bears the handwritten comments by Appellants' counsel. They argue that these documents reflect the "current financial status (available cash) of the estate/Liquidating Trust," which information "is fundamental to the question of whether equitable mootness applies." Appellees oppose the motions.

We deny the motions. These documents were not submitted to the District Court and, therefore, would not clarify our Court's "understanding of the process by which the District Judge reached the decision challenged on appeal." *Salinger v. Random House, Inc.*, 818 F.2d 252, 253 (2d Cir. 1987); *cf. Opetubo v. Citibank Student Loan Corp.*, 74 F. App'x 145, 146 (2d Cir. 2003) ("[T]his Court will not consider the additional evidence [debtor] submitted on appeal because the majority of the documents reflect changes in [debtor's] financial circumstances after the

**CONCLUSION**

For the reasons set forth above, we conclude that the District Court correctly applied the doctrine of equitable mootness in the context of this Chapter 11 liquidation and that it committed no abuse of discretion in determining that Appellants' claims are equitably moot. Accordingly, we **AFFIRM** the judgment of the District Court.

---

bankruptcy and district court decisions."). In any event, consideration of the documents would not affect the outcome of this case.