**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>VICTORIA M. GEWALT,<br>    Debtor. | BAP No. EC-21-1172-TBG<br><br>Bk. No. 2:21-bk-20600-CMK |
| MECHANICS BANK, Successor by merger from Rabobank,<br>    Appellant,<br>v.<br>VICTORIA M. GEWALT; WALTER R. DAHL, Trustee,<br>    Appellees. | **MEMORANDUM**[1] |

Appeal from the United States Bankruptcy Court
for the Eastern District of California
Christopher M. Klein, Bankruptcy Judge, Presiding

Before: TAYLOR, BRAND, and GAN, Bankruptcy Judges.

## INTRODUCTION

Appellant Mechanics Bank, successor by merger with Rabobank,

N.A. (collectively, the "Bank"), appeals the bankruptcy court's order

confirming appellee Victoria M. Gewalt's chapter 11[2] plan. For the reasons

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[2] Unless specified otherwise, all chapter and section references are to the

set forth below, we VACATE and REMAND.

## FACTS[3]

Prepetition, Ms. Gewalt was involved in real estate development, investment, and management for over 30 years. She acquired companies, investment properties, and rental properties and incurred significant debt secured by her properties as a result.

She also borrowed $1,162,500 from the Bank under the terms of a note entitling the Bank to monthly payments of principal and interest until repaid in full. The Bank holds a deed of trust against Ms. Gewalt's residence to secure its loan.

Ms. Gewalt defaulted under the Bank's note. To avoid foreclosure, she filed a chapter 11 petition and elected to be treated as a Subchapter V[4] small business debtor. At the time, she owed the Bank nearly $200,000 in arrears and the note required monthly mortgage payments of approximately $6,000 on her total indebtedness of approximately $1.3 million.

Ms. Gewalt has no monthly disposable income from which to pay her creditors. Thus, she proposed a Subchapter V liquidation plan. Under the plan, she would sell her properties or refinance her mortgages within two

Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[3] We exercise our discretion to take judicial notice of documents electronically filed in the bankruptcy case. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[4] "Subchapter V" refers to §§ 1181 through 1195 of subchapter V of chapter 11.

years and use the resulting proceeds to pay creditors.

Accordingly, her plan did not propose to make monthly mortgage payments to the Bank. It merely provided for payment "in full" of the Bank's claim within two years of the effective date.

The Bank voted to reject the plan and objected to confirmation. It argued that the plan violated § 1123(b)(5) by modifying its rights under the note. Specifically, it argued the plan eliminated Ms. Gewalt's obligation to make monthly payments with interest at the note's default rate.[5] The Bank also argued that the elimination of note payments violated § 1129(b).

At the confirmation hearing, the bankruptcy court entertained argument from the parties regarding whether the plan complied with §§ 1123(b)(5) and 1129(b). Then it issued its findings of facts and conclusions of law; they addressed § 1129(b) but not § 1123(b)(5). It found that the plan was fair and equitable because the Bank retained its lien and its rights subject to the plan's terms regarding timing of payment.

Thus, the bankruptcy court entered its order confirming the plan. The Bank timely appealed.

The Bank then moved the bankruptcy court for a stay of the confirmation order pending appeal, which was denied. The Bank did not

---

[5] The Bank also argued that the plan violated § 1123(b)(5) by failing to provide regular payments to cure arrears. It abandoned this position on appeal during oral argument. *See Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 330 (1993) (holding a chapter 13 plan may cure arrears over the life of the plan despite § 1322(b)(2), which contains the same material language as § 1123(b)(5)).

move the Panel for a stay pending appeal.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(L). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Whether this appeal is equitably moot.

Whether the bankruptcy court erred in confirming the plan.

## STANDARDS OF REVIEW

We review the bankruptcy court's decision to confirm a chapter 11 plan for an abuse of discretion. *Marshall v. Marshall (In re Marshall)*, 721 F.3d 1032, 1045 (9th Cir. 2013). It abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or makes factual findings that are illogical, implausible, or without support in the record. *United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).

Factual findings regarding whether a plan satisfies the confirmation requirements are reviewed for clear error. *See Comput. Task Grp., Inc. v. Brotby (In re Brotby)*, 303 B.R. 177, 184 (9th Cir. BAP 2003). Clear error exists when we are left with a definite and firm conviction that a mistake has been made. *Id*.

## DISCUSSION

### A. Equitable Mootness

We begin with Ms. Gewalt's claim that the appeal is equitably moot. Equitable mootness is "a judge-made abstention doctrine unrelated to

the constitutional prohibition against hearing moot appeals." *Rev Op Grp. v. ML Manager LLC (In re Mortgs. Ltd.)*, 771 F.3d 1211, 1214 (9th Cir. 2014) (internal quotation marks omitted). It occurs "when a comprehensive change of circumstances has occurred so as to render it inequitable for [the] court to consider the merits of the appeal." *Motor Vehicle Cas. Co. v. Thorpe Insulation Co (In re Thorpe Insulation Co.)*, 677 F.3d 869, 880 (9th Cir. 2012) (internal quotation marks omitted). It is a prudential doctrine under which we may exercise our discretion to dismiss an appeal "when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable." *Beeman v. BGI Creditors' Liquidating Tr. (In re BGI, Inc.)*, 772 F.3d 102, 107 (2d Cir. 2014) (internal quotation marks omitted). The "party moving for dismissal on mootness grounds bears a heavy burden." *In re Thorpe Insulation Co.*, 677 F.3d at 880 (internal quotation marks omitted).

> We consider several factors in determining equitable mootness:

> We will look first at whether a stay was sought, for absent that a party has not fully pursued its rights. If a stay was sought and not gained, we then will look to whether substantial consummation of the plan has occurred. Next, we will look to the effect a remedy may have on third parties not before the court. Finally, we will look at whether the bankruptcy court can fashion effective and equitable relief without completely knocking the props out from under the plan and thereby creating an uncontrollable situation for the bankruptcy court.

*Id.* at 881. In applying these factors, we decline to dismiss this appeal on

equitable mootness grounds.

First, while the Bank did not request a stay pending appeal from us, it sought one from the bankruptcy court, which was denied. "This cuts against equitable mootness." *Todeschi v. Juarez (In re Juarez)*, 603 B.R. 610, 620 (9th Cir. BAP 2019), *aff'd*, 836 F. App'x 557 (9th Cir. 2020).

Second, the record does not support that substantial consummation of the plan has occurred. "Substantial consummation" occurs when the following is found:

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
> (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
> (C) commencement of distribution under the plan.

§ 1101(2).

Here, the only property that Ms. Gewalt identifies as having been sold under the plan was sold pursuant to a pre-confirmation order entered on a § 363 motion. Related, Ms. Gewalt claims that portions of the sale proceeds were distributed to the Bank (approximately $20,000) and another secured creditor under the confirmed plan. Not so; the preexisting sale order authorized these distributions. Ms. Gewalt also claims that professional fees were awarded and paid under the plan. However, she failed to provide any evidence that plan distributions were made on account of these fees. In addition, a Subchapter V debtor must file and

serve notice of substantial consummation within 14 days of its occurrence. § 1183(c)(2).[6] No such notice has been filed. For the foregoing reasons, the record does not support that the plan has been substantially consummated.

The third factor relevant to whether an appeal is equitably moot (i.e., whether reversal would bear unduly on innocent third parties not before the court) also weighs against equitable mootness. *See In re Thorpe Insulation Co.*, 677 F.3d at 882. Ms. Gewalt has provided no argument that reversal would unduly bear on third parties. Given our substantial consummation analysis, we do not see how it could.

And finally, Ms. Gewalt has failed to articulate why, or to even claim that, the bankruptcy court cannot fashion effective and equitable relief. *See id.* at 883.

Based on the above, the appeal is not moot, and we reach the merits.

## B. Analysis of the Issues

The Bank asserts that the bankruptcy court erred in confirming the plan because: (1) the plan violated § 1123(b)(5) by modifying its loan rights; and (2) the plan was not "fair and equitable" as required by § 1129(b) because it did not provide for a regular stream of payments to the Bank. We first address the Bank's § 1123(b)(5) argument.

### 1. The Bank's Modification of Rights Argument

A bankruptcy court may only confirm a Subchapter V plan if all the

---

[6] The plan also provides that substantial consummation occurs only after service of the notice contemplated by § 1183(c)(2).

requirements of § 1129(a), other than paragraph (15) of that section, are met. § 1191(a). Section 1129(a)(1) requires that the plan meet all applicable provisions of the Code. As § 1123(b)(5) is applicable in Subchapter V cases, *see* § 1181, the plan must comply with it to be confirmed.[7] Section 1123(b)(5) provides that a plan may only modify the "rights" of a secured creditor if the creditor is not secured solely by an interest in the debtor's primary residence. In this case, Ms. Gewalt's primary residence is the Bank's only collateral. Thus, the plan may not modify the Bank's rights.

The bankruptcy court failed to issue any findings of fact or conclusions of law addressing whether the plan met the requirements of § 1123(b)(5). This was an error for which we must vacate and remand; the plan plainly modifies the Bank's rights.

Congress added § 1123(b)(5) to the Code in 1994 to make the anti-modification provision of § 1322(b)(2) in chapter 13 plans applicable in chapter 11. *See Lievsay v. W. Fin. Sav. Bank (In re Lievsay)*, 199 B.R. 705, 708-09 (9th Cir. BAP 1996). Because the language of §§ 1123(b)(5) and 1322(b)(2) are identical,[8] "case law that examines § 1322(b)(2) is persuasive in our analysis of § 1123(b)(5)." *BAC Home Loans Servicing, LP v. Abdelgadir (In re Abdelgadir)*, 455 B.R. 896, 900 n.7 (9th Cir. BAP 2011).

---

[7] Section 1190(3) contains an exception to the applicability of § 1123(b)(5) in Subchapter V cases that is irrelevant to this appeal.

[8] Both §§ 1123(b)(5) and 1322(b)(2) provide that a plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence[.]"

The Code does not define "rights" for purposes of §§ 1123(b)(5) and 1322(b)(2). Interpreting § 1322(b)(2), the Supreme Court held in *Nobelman* that a mortgage creditor's "rights" are reflected in the relevant mortgage instruments that are enforceable under applicable state law. 508 U.S. at 329. There, under applicable Texas law, the creditor's rights included "the right to repayment of the principal in monthly installments over a fixed term at specified adjustable rates of interest." *Id*.

Here, no one disputes the validity of the loan documents. And Ms. Gewalt presented no evidence disentitling the Bank to future monthly mortgage payments of principal and interest under the terms of the note. Thus, under *Nobelman*, the plan violated § 1123(b)(5) by abolishing the Bank's right to receive such payments.[9]

Indeed, we have held that a chapter 13 plan that withholds current mortgage payments pending a sale of a debtor's property violates § 1322(b)(2). *Phila. Life Ins. Co. v. Proudfoot (In re Proudfoot)*, 144 B.R. 876, 877-78 (9th Cir. BAP 1992) (citing *In re Gavia*, 24 B.R. 573, 574-75 (9th Cir. BAP 1982)). We reasoned that such a plan violates § 1322(b)(2) by creating defaults rather than by curing them under § 1322(b)(5). *Id*.

In so holding, we drew a distinction between an impermissible plan provision that denies a creditor future monthly payments as they became due and a permissible one that merely modifies the creditor's rights to the

---

[9] It is unclear if the plan calculates the Bank's claim using the note's default interest rate. If it does not, then the plan also modifies the Bank's rights in that regard.

extent of curing a default within a reasonable time. *Id.* at 878. The

distinction comports with the Supreme Court's holding in *Nobelman*:

> The lender's power to enforce its rights—and, in particular, its
> right to foreclose on the property in the event of default—is
> checked by the Bankruptcy Code's automatic stay provision. 11
> U.S.C. § 362. In addition, § 1322(b)(5) permits the debtor to cure
> prepetition defaults on a home mortgage by paying off
> arrearages over the life of the plan "notwithstanding" the
> exception in § 1322(b)(2). These statutory limitations on the
> lender's rights, however, are independent of the debtor's plan
> or otherwise outside § 1322(b)(2)'s prohibition.

*Nobelman*, 508 U.S. at 330 (cleaned up). Thus, while Ms. Gewalt's plan

appropriately modified the Bank's rights to the extent that it allowed her to

cure her existing defaults over time, it impermissibly modified the Bank's

right to future monthly mortgage payments.

### 2. The Bank's Fair and Equitable Argument

The Bank also argues that the plan must provide it with a stream of

payments to be fair and equitable under § 1129(b). We interpret the Bank's

§ 1129(b) argument as one under § 1191.[10] But we need not reach the merits

of the Bank's § 1191 fair and equitable argument because the plan fails to

---

[10] Section 1181(a) makes § 1129(b) inapplicable as a whole in Subchapter V cases.
However, for purposes of the issue here, §§ 1129(b)(1) and 1191(b) contain materially
identical language. Under both sections, with exceptions not relevant here, a
bankruptcy court shall confirm a nonconsensual plan if the plan: (1) satisfies all
applicable requirements of § 1129(a); and (2) "does not discriminate unfairly, and is fair
and equitable, with respect to each class of claims or interests that is impaired under,
and has not accepted, the plan." And § 1191(c)(1) imports into Subchapter V cases
§ 1129(b)(2)(A)'s plan requirements for "fair and equitable" treatment of secured claims.

meet § 1191(b)'s threshold requirement that the plan comply with § 1129(a)(1). As discussed above, under § 1129(a)(1), the plan must comply with all applicable Code provisions, which in this case includes § 1123(b)(5). And this plan does not so comply.

## CONCLUSION

Based on the foregoing, we VACATE and REMAND.

11